IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PENINSULA PETROLEUM FAR EAST PTE. LTD.** | § § § | **CIVIL ACTION NO. 3:22-CV-241-L** |
| **VERSUS** | § § | |
| **CRYSTAL CRUISES, LLC & STAR CRUISES (HK) LIMITED** | § § § § | **IN ADMIRALTY, RULE 9(H)** |

## MEMORANDUM IN SUPPORT OF

## MOTION TO VACATE RULE B ATTACHMENT

PD.36783517.1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.     BACKGROUND ................................................................................................................ 1

II.    LAW AND ARGUMENT .................................................................................................. 3

    A.   General Principles Regarding Rule B Attachments ............................................... 4

    B.   Rule B Attachments Can Be Vacated on Equitable Grounds ................................ 5

    C.   Equitable Vacatur Is Warranted Because Defendants Are Subject to Suit in a Convenient Jurisdiction ....................................................................................................................... 7

    D.   Equitable Vacatur Is Also Warranted Because Plaintiff Has Already Obtained Sufficient Security in the Bahamas ........................................................................................................ 9

III.   CONCLUSION ................................................................................................................. 10

PD.36783517.1

# TABLE OF AUTHORITIES

**Cases**

*Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*,
   No. 14-1707, 2015 WL 138114 (S.D. Tex. Jan. 8, 2015) ............................................................ 6

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434 (2d Cir. 2006) ................................................................................................... 8, 9

*Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd.*,
   No. 12-1600, 2012 WL 2567149 (E.D. La. July 2, 2012) ............................................... 4, 5, 6

*China National Chartering Corp. v. Pactrans Air & Sea Inc.*,
   589 F. Supp. 2d 403 (S.D.N.Y. 2008) ................................................................................ 7, 8, 9

*Jensen v. Rollinger*,
   No. 13-1095, 2014 WL 4539660 (W.D. Tex. Sept. 11, 2014) ..................................................... 6

*Knox v. Hornbeck Offshore Serv., LLC*,
   No. 19-181, 2019 WL 3203396 (S.D. Tex. July 16, 2019) .................................................... 5, 6

*Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*,
   817 F.3d 241 (5th Cir. 2016) .................................................................................................... 10

*McDermott Gulf Operating Co. v. Con-Dive, LLC*,
   317 F. App'x 67 (11th Cir. 2010) ................................................................................................ 6

*Naftomar Shipping & Trading Co. v. KMA Intern., S.A.*,
   2011 WL 888951 (S.D. Tex. Mar. 3, 2011) ................................................................................ 6

*Oldendorff Carriers GMBH & Co. v. Grand China Shipping (Hong Kong) Co., Ltd.*,
   No. 12–074, 2013 WL 1628358 (S.D. Tex. Mar.28, 2013) ........................................................ 6

*Peninsula Petroleum Far East Pte. Ltd. v. Crystal Cruises, LLC, et al.*,
   No. 2:22-cv-898 (C.D. Cal., filed Feb. 9, 2022) ........................................................................ 2

*Peninsula Petroleum Far East Pte. Ltd. v. M/V CRYSTAL SYMPHONY, et al*,
   No. 1:22-cv-20230 (S.D. Fla. filed Jan. 19, 2022) ..................................................................... 2

*ProShipLine Inc. v. Aspen Infrastructures Ltd.*,
   609 F.3d 960 (9th Cir. 2010) ...................................................................................................... 6

*Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co.*,
   No. 15-490, 2015 WL 893518 (E.D. La. Mar. 2, 2015) ............................................................. 5

*Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion*,
   773 F.2d 1528 (11th Cir. 1985) .................................................................................................. 5

*Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*,
    743 F.2d 956 (1st Cir. 1984) ................................................................................................4

*Williamson v. Recovery Ltd. Partnership*,
    542 F.3d 43 (2d Cir. 2008) ..................................................................................................5

**Other Authorities**

Fed. R. Civ. Pro., Supplemental Rule E ................................................................................3, 4, 5

Crystal Cruises, LLC and Mark C. Healy, assignee of Crystal Cruises, LLC,[1] appearing specially and restrictively and solely as Claimants of the garnishment proceeds herein, and respectfully submit this Memorandum in support of their Motion to Vacate the Rule B Attachments in this matter. *See* Rec. Docs. 18 & 20.[2]

## I.   BACKGROUND

This matter arises out of the recent commercial difficulties of Crystal Cruises, an American company that operated luxury cruise ships owned by various Hong Kong entities. As is relevant here, Crystal Cruises was the bareboat charterer of the CRYSTAL SYMPHONY and the CRYSTAL SERENITY, two luxury cruise vessels operating out of Miami, Florida. In its Complaint in this matter, Peninsula Petroleum Far East Pte. Ltd. (hereinafter "Plaintiff") alleges that it provided "bunkers" to the SYMPHONY and the SERENITY on various dates in January 2022 in the port of Miami.[3] It further alleges that Crystal Cruises ordered the bunkers from Plaintiff, but the Complaint does not provide any further details of the alleged transaction(s).[4] Plaintiff claims that Crystal Cruises owes it approximately $2.1 million.

The present action in this Court is not the first time that Plaintiff has filed a lawsuit based on this alleged debt. On January 19, 2022, Plaintiff filed a lawsuit against Crystal Cruises in the

---

[1] Mr. Healy is the assignee of all of Crystal Cruises' assets pursuant to a Petition Commencing Assignment for the Benefits of Creditors filed in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida. *See* Exhibit A, Appendix at p. 3. Crystal Cruises and Mr. Healy jointly bring this Motion to Vacate the Rule B Attachment.

[2] Rec. Docs. 18 & 20 are the two Writs of Attachment that are in the public record. A significant portion of the record is currently sealed and so Crystal Cruises cannot presently ascertain whether any additional writs were issued. This motion is intended to apply to any and all Rule B attachments issued in this case.

[3] Rec. Doc. 1 at ¶ 9. "Bunkers" or "bunker fuel" is the term for fuel oil used to power modern vessels and the term is derived from the tank in which the fuel is stored.

[4] Rec. Doc. 1 at ¶ 7. Plaintiff also alleges various sales to Star Cruises (HK), but its claims against Star are not at issue on this motion.

U.S. District Court for the Southern District of Florida, where Crystal Cruises is subject to personal jurisdiction because its principal place of business is located in Miami (hereinafter, the "Miami Lawsuit").[5]  In the Miami Lawsuit, Plaintiff asserted the exact same allegations, the exact same claims, and seeks the exact same amounts that it seeks here (*i.e.* a $2.1 million judgment against Crystal Cruises).  Crystal Cruises was recently served with the Miami Lawsuit and will respond in due course to that action.[6]

On February 1, 2022, Plaintiff successfully obtained warrants of arrest in the Bahamas for *both* the SYMPHONY and the SERENITY.  Thus, Plaintiff has successfully attached both vessels and, in the process, obtained security for its claims regarding the bunkers at issue.[7]

Not content to pursue Crystal Cruises in the forum of Plaintiff's own choosing (Miami), nor content to have arrested two large luxury cruise vessels as security for its claims (in the Bahamas), Plaintiff subsequently filed three additional actions.  On February 1, 2022, Plaintiff filed this action and an almost identical action in the Southern District of Texas.  The two Texas lawsuits purport to assert the same causes of action for breach of an alleged maritime contract for the same bunkers as the Miami Lawsuit, but the Texas lawsuits seek pre-judgment security for those claims in the form of garnishments of Crystal Cruises' bank accounts.[8]

---

[5] *See Peninsula Petroleum Far East Pte. Ltd. v. M/V CRYSTAL SYMPHONY, et al*, No. 1:22-cv-20230 (S.D. Fla. filed Jan. 19, 2022).  A copy of the complaint in that matter is included in the appendix for the Court's convenience.  *See* Exhibit B, Appendix at p. 12.

[6] In the Miami Lawsuit, Plaintiff also sought a Rule C arrest of the SYMPHONY, but that arrest was not perfected because the SYMPHONY went into port in the Bahamas instead of Miami.

[7] Copies of the Bahamas arrests are included in the appendix.  *See* Exhibit C (SYMPHONY), Appendix at p. 19, and Exhibit D (SERENITY), Appendix at p. 29..

[8] Plaintiff also filed a third action seeking a Rule B attachment in the Central District of California. *Peninsula Petroleum Far East Pte. Ltd. v. Crystal Cruises, LLC, et al.*, No. 2:22-cv-898 (C.D. Cal., filed Feb. 9, 2022).  That court initially declined to issue any Rule B attachment and ordered the Plaintiff to submit a supplemental submission to the court, after which Plaintiff voluntarily dismissed the action.

Plaintiff is prosecuting its admiralty claims in this case under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). Specifically, Plaintiff sought its garnishment under Supplemental Rule B, based on the bald allegation that Crystal Cruises breached an alleged contract with Plaintiff. Based on Plaintiff's *ex parte* motion, the Court issued writs of attachment of Crystal Cruises' bank accounts pursuant to Supplemental Rule B. It appears that Plaintiff chose to bring its action here for the sole purpose of obtaining a Rule B attachment of Crystal Cruises' assets before judgment.

Supplemental Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Accordingly, Crystal Cruises and its assignee Mark Healy now challenge the Rule B attachments of the bank accounts and respectfully request that the Court vacate the attachments for the reasons discussed below.

## II.   LAW AND ARGUMENT

The principal purpose of Rule B is to provide a mechanism by which a plaintiff can obtain jurisdiction over an otherwise-absent defendant. A secondary purpose is to permit a plaintiff to obtain prejudgment security for an admiralty claim. Neither purpose is accomplished by Plaintiff's attachments in this proceeding. First, several weeks *before* filing this suit, Plaintiff filed suit in a forum (Miami) in which Crystal Cruises is subject to personal jurisdiction. Thus, Plaintiff had already obtained personal jurisdiction over Crystal Cruises (in a forum of Plaintiff's choosing no less) before it sought the Rule B attachments in this case. Second, Plaintiff has arrested the two luxury cruise vessels to which it allegedly provided the bunkers at issue and thus has already

3

obtained more than adequate security for its claims.[9]  Because no legitimate purpose is served by continuing the Rule B attachments in this action, Crystal Cruises and its assignee Mark Healy respectfully request that the Court vacate the Rule B attachments issued in this case.[10]

### A. General Principles Regarding Rule B Attachments

Supplemental Rule B permits a plaintiff with a claim against an absent defendant to attach the defendant's property if the plaintiff can show that "(1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd.*, No. 12-1600, 2012 WL 2567149, at *1 (E.D. La. July 2, 2012).

Property owners have long claimed that the *ex parte* nature of Rule B attachments violates the procedural due process clause of the Fifth Amendment to the United States Constitution.  *See e.g.*, *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 958 (1st Cir. 1984).  Those challenges have been unsuccessful only because property owners are entitled to a prompt post-attachment hearing under Supplemental Rule E(4)(f): "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated." Supplemental Rule E(4)(f).  Courts have held that "[a]n immediate postattachment hearing strikes a workable balance between the creditor's need to reach the property before it leaves the court's jurisdiction and a

---

[9] The SYMPHONY and the SERENITY are together worth well more than $100 million—an enormous sum in comparison to Plaintiff's $2 million claim.

[10] While the merits of Plaintiff's claims, and its contention that it had a maritime contract with Crystal Cruises, are hotly disputed, it is not necessary for the Court to consider Plaintiff's claims on the merits to resolve this motion.  Crystal Cruises and its assignee Mark Healy reserve all rights to contest the merits of Plaintiff's allegations at the appropriate time, if necessary.

debtor's fear that his property will be unjustly attached" and that "[s]uch a hearing provides a maritime debtor with the process he is due." *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion*, 773 F.2d 1528, 1539 (11th Cir. 1985).[11]  Accordingly, Crystal Cruises and Healy are entitled to a prompt hearing to determine whether the Rule B attachment in this case should be vacated.

"For purposes of a Rule E(4)(f) post-arrest hearing, superficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Austral Asia*, 2012 WL 2567149 at *1.  Indeed, "[t]he attachment **must** be vacated unless the attaching party presents sufficient evidence to show **probable cause** for the attachment." *Richardson Stevedoring & Logistics Servs., Inc. v. Daebo Int'l Shipping Co.*, No. 15-490, 2015 WL 893518, at *2 (E.D. La. Mar. 2, 2015) (emphasis added).

### B.     Rule B Attachments Can Be Vacated on Equitable Grounds

"In addition to its authority to vacate an attachment due to a plaintiff's failure to satisfy the requirements of Supplemental Rules B and E, a district court also has equitable discretion to vacate an attachment." *Knox v. Hornbeck Offshore Serv., LLC*, No. 19-181, 2019 WL 3203396, at *2 (S.D. Tex. July 16, 2019) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other ground by Shipping Corp. of India Ltd. v. Jaladhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)).  "While the scope of the district court's equitable vacatur power has not been defined by the United States Supreme Court or the Fifth Circuit, the

---

[11] S*ee also Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2d Cir. 2008) ("Despite our general policy of allowing maritime attachments, we have nonetheless found that, even when a plaintiff meets the procedural requirements for obtaining a maritime attachment, the district court may nonetheless vacate such an attachment for equitable reasons. 'Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attach the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.'") (quoting Advisory Committee's Note to 1985 Amendment to Supplemental Rule E(4)(f)) (alterations in original).

5

Second Circuit has held that equitable vacatur is appropriate under any of the following conditions: '1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district court where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.'" *Knox*, 2019 WL 3203396, at *2 (citing *Aqua Stoli*, 460 F.3d at 445).

The Fourth and Ninth Circuits have both cited with approval the equitable vacatur test announced in *Aqua Soli*, and the Eleventh Circuit has affirmed a district court's vacatur of an attachment based on "an equitable exception of the general rule upholding maritime attachments." *Knox*, 2019 WL 3203396, at *3 (citing *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 537 (4th Cir. 2013) (quoting *Aqua Stoli*, 460 F.3d at 447)); *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 969 (9th Cir. 2010) ("we agree with and adopt the contours of equitable vacatur laid out by the Second Circuit"); *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 317 F. App'x 67, 70 (11th Cir. 2010) (citing *Aqua Stoli*, 460 F.3d at 444-45).

Importantly, although the Fifth Circuit has not explicitly adopted the equitable vacatur test, the district courts in the Fifth Circuit (including this one) regularly apply it. *See, e.g.*, *Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*, No. 14-1707, 2015 WL 138114 (S.D. Tex. Jan. 8, 2015); *Jensen v. Rollinger*, No. 13-1095, 2014 WL 4539660, at *2 (W.D. Tex. Sept. 11, 2014) (citing *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 915 (S.D.Tex.2013)); *Oldendorff Carriers GMBH & Co. v. Grand China Shipping (Hong Kong) Co., Ltd.*, No. 12–074, 2013 WL 1628358, at *3 (S.D. Tex. Mar.28, 2013); *Naftomar Shipping & Trading Co. v. KMA Intern., S.A.*, 2011 WL 888951, *2 (S.D. Tex. Mar. 3, 2011); *Austral Asia*, 2012 WL 2567149, at *1 (citing *Aqua Stoli*, 460 F.3d at 445).

6

Here, equitable principles warrant vacating the Rule B attachments for the following reasons: (1) Defendants are subject to suit in the Southern District of Florida, a convenient jurisdiction to Plaintiff and Defendants; and (2) by arresting the CRYSTAL SYMPHONY and the CRYSTAL SERENITY in the Commonwealth of The Bahamas, Plaintiff has obtained more than sufficient security for its claims related to the bunkers at issue, rendering any Rule B attachment in this action improper and wholly unnecessary.

### C. Equitable Vacatur Is Warranted Because Defendants Are Subject to Suit in a Convenient Jurisdiction

The U.S. District Court for the Southern District of New York's opinion in *China National Chartering Corp. v. Pactrans Air & Sea Inc.*, 589 F. Supp. 2d 403 (S.D.N.Y. 2008), is highly persuasive because it is well-reasoned and remarkably similar (both factually and procedurally) to the instant case. *Pactrans* involved a shipment of damaged gypsum wallboard aboard China National Chartering Corp.'s ("CNCC") vessel M/V SANKO RALLY. The damaged cargo was imported from China to Florida by Devon, through its freight forwarder Pactrans. Like this case, "a good deal of litigation ensued" as a result of the dispute, including: (1) a lawsuit commenced by Devon in the Northern District of Florida against the M/V SANKO RALLY, *in rem*, and against Pactrans, *in personam*; (2) a lawsuit filed by Pactrans against Devon and CNCC in the Northern District of Florida; and (3) a lawsuit commenced by CNCC in the Southern District of New York. *Id*. at 404. Significantly, Pactrans obtained various Rule B attachments against Devon in the New York action. In turn, Devon moved to vacate the attachments on equitable grounds. It specifically argued that both Devon and Pactrans had appeared *in personam* in the Florida actions, and that the Florida forum was convenient to both parties. *Id*. at 404-05.

In its opinion vacating the Rule B attachments, the New York court correctly noted that the question of vacatur hinged on whether the fact that Devon was subject to suit in the Northern

7

District of Florida satisfied the *Aqua Stoli* factor requiring that Devon be subject to suit in a "convenient adjacent jurisdiction." *Id.* at 405. Before reaching a decision on that specific issue, however, the court conducted a detailed, high-level analysis of *Aqua Stoli*. In particular, the New York Court focused on the legal significance of the use of the word "adjacent" in the phrase "convenient adjacent jurisdiction." Quoting directly from *Aqua Stoli*, the court noted that equitable vacatur was warranted where "the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff." *Id*. One such "paradigmatic case" of a "jurisdiction convenient to the plaintiff" would be a scenario in which "assets are located in the Eastern District of New York but the defendant is located 'across the river' in the Southern District." *Id*. Significantly, the court in *Pactrans* emphasized that *Aqua Stoli*'s use of the phrase "convenient adjacent jurisdiction" was in the context of that discussion regarding a "paradigmatic case" or example. *See id*.

Thus, taking the *Aqua Stoli* opinion as a whole, the court concluded that the use of the word "adjacent" was not intended to limit a district court's discretion to vacate a maritime attachment on the basis of a defendant's amenability to suit *in personam* in another convenient district only to situations in which that other district literally abutted upon the district in which the attachment was obtained. *Id*. at 405-06. Rather, the court correctly concluded that "the fundamental considerations are whether the defendant in fact is subject to *in personam* jurisdiction elsewhere and, if so, whether the district in which that is the case is convenient to the plaintiff or attaching party." *Id*. at 406.

Having performed this rigorous analysis of *Aqua Stoli*, the *Pactrans* court held that, even though Pactrans and Devon were strangers to the Northern District of Florida, both parties had actively litigated the incident at issue in that forum. *Id.* at 406. Thus, the court concluded that

8

Pactrans could not "be heard to complain of any inconvenience of litigating in the Northern District of Florida inasmuch as it chose to file its own action against Devon there." *Id.*  Ultimately, the court granted Devon's motion to vacate the Rule B attachments on the basis that Devon had established that it was subject to *in personam* jurisdiction in another forum that was convenient to both Pactrans and Devon.  *Id.*

The instant case is indistinguishable from *Pactrans*.  Here, Plaintiff first initiated suit in a forum of its choosing—Miami—and one in which Crystal Cruises is undisputedly subject to personal jurisdiction.  Because Plaintiff itself chose that forum (and elected to file its first lawsuit related to the bunkers at issue there), Plaintiff cannot possibly argue that the Southern District of Florida is inconvenient.[12]  Accordingly, equitable principles warrant vacating the Rule B attachments at issue in this case under the first *Aqua Stoli* factor, as defendants are subject to suit in the Southern District of Florida and Plaintiff has perfected in *personam jurisdiction* against Defendants in that forum.

### D. Equitable Vacatur Is Also Warranted Because Plaintiff Has Already Obtained Sufficient Security in the Bahamas

As previously discussed, equitable vacatur is also appropriate when the plaintiff has already obtained sufficient security for its claims, by attachment or otherwise.  In the case at bar, prior to filing the Rule B attachments at issue in this Court, plaintiff arrested the CRYSTAL SYMPHONY and the CRYSTAL SERENITY in the Bahamas.  It cannot reasonably be disputed that the value of those vessels — two luxury cruise ships with respective gross tonnages of 51,044 and 68,870 tons — far exceeds the $2 million in claims that are the basis of Plaintiff's Rule B attachments.

---

[12] That forum is also the forum in which Plaintiff claims to have delivered all of the bunkers at issue.  Thus, in addition to being the home of Crystal Cruises, it is also the judicial district in which the events relevant to Plaintiff's claims appear to have occurred.

9

Accordingly, Plaintiff is grossly over-secured and the Rule B attachments serve no legitimate purpose.

One of the reasons for the existence of the Rule B process is to provide plaintiffs with a mechanism to obtain security for a claim. *See Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016). However, it logically follows that when plaintiff obtains sufficient security through other means, such as by arresting a vessel, the Rule B process becomes totally unnecessary. That is clearly the case here and the Rule B attachments can and should be vacated on this additional basis.

### III.   CONCLUSION

All of the forgoing analysis leads to the same place—a plaintiff is not entitled to pursue a Rule B attachment unless the specific attachment furthers one of Rule B's legitimate purposes. Where an attachment does not further such a purpose, it cannot be reasonably disputed that the attachment is subject to vacatur under equitable principles. Courts have generally applied three grounds for vacating Rule B attachments. Remarkably, two of those three are present here. Because Plaintiff can (and has) obtained personal jurisdiction over Crystal Cruises in Florida, it cannot arbitrarily seek Rule B attachments in other forums. That is precisely what Plaintiff has done here and it is improper. Additionally (and independently from the first reason), Plaintiff is drastically over-secured on its claims already, rendering further security unnecessary. Accordingly, for either of these reasons, the Rule B attachments issued in this forum should be vacated.

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Marc G. Matthews*
Marc G. Matthews
Texas Bar No. 24055921
910 Louisiana Street, Suite 4300
Houston, Texas  77002
Telephone: (713) 626-1386
Facsimile: (713) 626-1388
Email: marc.matthews@phelps.com

**ATTORNEY FOR CRYSTAL CRUISES, LLC AND MARK C. HEALY, AS ASSIGNEE OF CRYSTAL CRUISES**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of February, 2022, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

*/s/ Marc G. Matthews*

11

PD.36783517.1